**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ADNAN ABULKADIR ABDULLA, *et al.*,<br>*Plaintiffs*,<br>v.<br>STEVEN H. FAGIN, *et al.*,<br>*Defendants*. | Civil Action No. 25 - 3130 (LLA) |

## MEMORANDUM OPINION

Plaintiffs Adnan Abdulkadir Abdulla and Abdullah Abdulqader Abdullah, Iraqi nationals, seek to compel Defendants—Steven H. Fagin, in his official capacity as Chargé d'Affaires of the U.S. Embassy in Iraq, and Marco Rubio, in his official capacity as U.S. Secretary of State—to adjudicate their visa applications, of which Plaintiffs' spouses and children are derivative beneficiaries. ECF No. 1.[1] Plaintiffs contend in their complaint that their visa applications have been unreasonably delayed in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq*., and the Mandamus Act, 28 U.S.C. § 1361. ECF No. 1 ¶¶ 47-58. Defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 5. Only one visa application—for Adnan's son, Abdulbasit—remains outstanding. *See* ECF Nos. 7, 10. For the reasons explained below, the court will grant the motion to dismiss.

---

[1] Plaintiffs named former Deputy Chief of Mission of the U.S. Embassy in Iraq Elizabeth Kennedy Trudeau as a Defendant, but the current Chargé d'Affaires is "automatically substituted" as a party pursuant to Federal Rule of Civil Procedure 25(d).

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The court draws the following facts, accepted as true, from Plaintiffs' complaint. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). It further takes judicial notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, provides that a U.S. citizen, U.S. national, or lawful permanent resident may petition for a qualifying relative to receive permanent residency in the United States. 8 U.S.C. § 1154. There are several steps to the process. First, the sponsor must file a Form I-130 Petition for Alien Relative with U.S. Citizenship and Immigration Services ("USCIS"). *Id.*; *see* 8 C.F.R. § 204.1(a)(1); USCIS, *I-130 Petition for Alien Relative*.[2] The sponsored applicant is designated as the "principal beneficiary" of the petition, and his spouse and minor children may be designated as "derivative beneficiaries," who are "entitled to the same status, and the same order of consideration[,] . . . [as] the spouse or parent." 8 U.S.C. § 1153(d); *see Sereshti v. Gaudiosi*, No. 24-CV-1288, 2024 WL 4625802, at *1 (D.D.C. Oct. 30, 2024). If USCIS approves the petition, it forwards the case to the State Department's National Visa Center. 8 C.F.R. § 204.2(g)(3). Each foreign national must then submit a Form DS-260 Immigrant Visa Application and undergo an interview with a consular officer at the appropriate consular office. 22 C.F.R. §§ 42.61-.63. At the conclusion of the interview, the consular officer "must issue" or "refuse the visa." *Id.* § 42.81(a). If the consular officer determines that he does not have sufficient information to establish visa eligibility, he may "refuse" the visa pending further administrative processing under Section 221(g) of the INA, which typically consists of

---

[2] *Available at* https://perma.cc/F72X-ZHEL.

additional information gathering. U.S. Dep't of State, *Administrative Processing Information*;[3] *see* 8 U.S.C. § 1201(g); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022).

In July 2007, Khevan Abdulkadir Abdulla ("Khevan"), a U.S. citizen, filed Form I-130 petitions on behalf of his brothers, Adnan Abdulkadir Abdulla ("Adnan") and Abdullah Abdulqader Abdullah ("Abdullah"). ECF No. 1 ¶¶ 18, 30. Adnan's wife and five children, including his son Abdulbasit Abdulkadir ("Abdulbasit"), were designated as derivative beneficiaries of Adnan's petition, *id.* ¶ 18, and Abdullah's wife and three children were designated as beneficiaries of Abdullah's petition, *id.* ¶ 30. USCIS approved both applications in September 2007. *Id.* ¶¶ 19, 31.

In July 2024, both families attended consular interviews in Iraq. *Id.* ¶¶ 24, 37. After the interviews, Adnan and Abdullah received notices stating that their visa applications were being temporarily refused under Section 221(g) of the INA. *Id.* ¶¶ 25, 38; *see* ECF Nos. 1-1, 1-3. Over the next few months, the U.S. Embassy in Iraq requested that Adnan submit supplemental forms for himself, his wife, and Abdulbasit, ECF No. 1 ¶¶ 27-28; *see* ECF No. 1-2, at 3, 16, and that Abdullah submit supplemental forms for himself and his wife, ECF No. 1 ¶ 40; *see* ECF No. 1-4, at 7. Adnan and Abdullah submitted the requested forms, and the embassy acknowledged receipt. ECF No. 1 ¶¶ 27-28, 40; *see* ECF No. 1-2, at 2, 14; ECF No. 1-4, at 6. Over the next several months, Adnan, Abdullah, and Khevan reached out to the U.S. Embassy in Iraq and the Office of U.S. Congressman Gerald Connolly for updates on the visa applications, but they did not receive meaningful responses. ECF No. 1 ¶¶ 29, 41-46; *see generally* ECF Nos. 1-2, 1-4. The delayed adjudication of the visa applications has prevented Adnan's and Abdullah's families from

[3] *Available at* https://perma.cc/7FG4-C6K2.

reuniting with Khevan and has caused financial hardship. *See* ECF No. 1 ¶¶ 7-10. Adnan and Abdullah also allege that "[b]asic services like electricity and clean water are often unreliable" in Iraq and that Khevan's past work as a translator for the U.S. military places his family members in Iraq at risk. *Id.* ¶ 9.

In September 2025, Adnan and Abdullah filed a complaint seeking to compel Defendants to adjudicate and conclude processing of their visa applications. ECF No. 1. Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 5. The motion is fully briefed. ECF Nos. 5, 7, 8. While Defendants' motion to dismiss was pending, Plaintiffs and their eligible derivative beneficiaries—except for Abdulbasit—were granted visas. ECF No. 7, at 13-14 ("To date, Plaintiffs' other eligible family members, with the exception of Abdulbasit Abdulkadir, have been granted a visa."); ECF No. 10 (Sep. 3. 2026 joint status report confirming that Abdulkadir's visa application remains pending).[4]

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction," and it is generally presumed that "a cause lies outside [of] this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), the court must dismiss an action unless the plaintiff can establish, by a preponderance of the evidence, that the court possesses subject-matter jurisdiction. *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177-78 (D.D.C. 2007). In reviewing such a motion, the court "is not limited to the allegations set forth in the complaint,"

[4] Another of Adnan's children, Haiba, aged out of being eligible for a derivative visa during the pendency of their applications. ECF No. 1 ¶ 9; *see* 8 U.S.C. § 1153(h)(1).

*Morrow v. United States*, 723 F. Supp. 2d 71, 76 (D.D.C. 2010), and "may consider materials outside the pleadings," *id.* (quoting *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)). Additionally, when reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court is required to "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

**B. Federal Rule of Civil Procedure 12(b)(6)**

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the

complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

## III. DISCUSSION

As a preliminary matter, the court will dismiss Abdullah's claims as moot because he and his derivative beneficiaries have been issued visas during the pendency of this litigation. The court then turns to Defendants' arguments for dismissal of Adnan's claims concerning Abdulbasit: (1) that the doctrine of consular nonreviewability bars consideration of Adnan's claims, ECF No. 5, at 9-12; (2) that Adnan fails to identify a discrete agency action that Defendants were obligated to, but did not, take, *id.* at 4-9; and (3) that Adnan has failed to state a claim for unreasonable delay, *id*. at 12-19. The court considers each argument in turn.

### A. Mootness

"Article III of the Constitution limits the federal courts to adjudication of actual, ongoing controversies." *Sierra Club v. Jackson*, 648 F.3d 848, 852 (D.C. Cir. 2011). "A case becomes moot and must be dismissed for lack of jurisdiction 'when, by virtue of an intervening event, a [court] cannot grant any effectual relief whatever in favor of the [plaintiff].'" *Mehneh v. Rubio*, 164 F.4th 928, 931 (D.C. Cir. 2026) (quoting *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam)). Here, the parties agree that only Abdulbasit, an eligible derivative beneficiary of Adnan's application, awaits a final adjudication of his visa application. *See* ECF No. 7, at 9 ("Plaintiffs lodge this lawsuit in hopes that the Court will compel Defendants to act to allow for final adjudication of Abdulbasit Abdulkadir's visa[] as soon as practicable."); ECF No. 8, at 1 & n.1 (acknowledging Plaintiffs' update that only Abdulbasit "remains without visa issuance"); ECF

No. 10 (Sep. 3, 2026 joint status report confirming that Abdulbasit's visa remains outstanding). Abdullah and his derivative beneficiaries received their visas while this case was pending, *see* ECF No. 7, at 13-14, so Abdullah's claims are moot because this court "cannot 'grant any effectual relief'" to him and his derivative beneficiaries. *Mehneh*, 164 F.4th at 931 (quoting *Calderon*, 518 U.S. at 150); *see Sayad v. U.S. Dep't of Homeland Sec.*, No. 20-CV-2333, 2022 WL 4130840, at *2 (D.D.C. Sep. 12, 2022) (dismissing a visa mandamus case as moot after a consular officer issued a final decision on the relevant visa application).

Defendants also contend that Adnan's claims should be dismissed as moot because his visa has been issued. *See* ECF No. 8, at 1 n.1. But Adnan maintains a live controversy over his claim seeking adjudication of his son Abdulbasit's application, which remains in administrative processing. *See id.*; ECF No. 7-2, at 3. Because Adnan has not obtained the precise relief he sought—adjudication of his derivative beneficiary's visa application, *see* ECF No. 1, at 13—his claims are not moot. *See Schnitzler v. United States*, 761 F. 3d 33, 39 (D.C. Cir. 2014) (holding that a plaintiff's claim was not moot "[b]ecause he ha[d] not received all the relief he sought"); *cf. Aboutalebi v. Dep't of State*, No. 19-CV-2605, 2019 WL 6894046, at *2 (D.D.C. Dec. 18, 2019) (explaining that the plaintiff's claims concerning the unreasonable delay in the adjudication of her visa application were rendered moot by a subsequent visa refusal because the plaintiff "received the precise relief she sought," that is, an adjudication of her visa application). Moreover, Adnan alleges emotional, personal, and financial hardship caused by his continued separation from his son, ECF No. 7, at 14, so he maintains "'a legally cognizable interest in the outcome'" of this case, *Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 442 (D.C. Cir. 2020) (quoting *Almaqrami v. Pompeo*, 933 F.3d 774, 779 (D.C. Cir. 2019)). The court will accordingly dismiss Abdullah's claims as

moot but concludes that Adnan's claims arising out of his son Abdulbasit's derivative visa application remain live.

### B. Consular Nonreviewability

Defendants argue that the court must dismiss under Rule 12(b)(6) based on the doctrine of consular nonreviewability. ECF No. 5, at 9-12.[5] In the context of visa adjudications, "[c]onsular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). However, "a long line of decisions from this Court have held that the consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 11 (D.D.C. 2022) (collecting cases).

In response to this longstanding precedent, Defendants point to the D.C. Circuit's unpublished decision in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), arguing that while there may have previously been "some debate . . . as to whether the doctrine applie[s] in cases seeking to compel action on visa applications in post-refusal administrative processes, *Karimova* necessitates an end to that debate." ECF No. 5, at 11. In Defendants' view, *Karimova* conclusively establishes that where a visa application has been refused under Section 221(g) and placed in administrative processing, a final decision has been

---

[5] It is well established that the doctrine of consular nonreviewability is not jurisdictional. *See Dep't of State v. Muñoz*, 602 U.S. 899, 908 n.4 (2024).

rendered on the application. *Id*. at 12; *see Karimova*, 2024 WL 3517852, at *2-3, *6. The court disagrees.

As an initial matter, the court notes—contrary to Defendants' assertion, ECF No. 5, at 6 n.1—that the D.C. Circuit's decision in *Karimova* does not bind it. The D.C. Circuit has twice declined to publish *Karimova*. *See Karimova*, 2024 WL 3517852, at *6; Order at 1, *Karimova v. Abate*, No. 23-5178 (D.C. Cir. Sep. 10, 2024), Doc. No. 2074062. Under the D.C. Circuit's rules, "[w]hile unpublished dispositions *may* be cited[,] . . . a panel's decision to issue an unpublished disposition means that the panel *sees no precedential value* in that disposition." D.C. Cir. R. 36(e)(2) (emphases added).[6] This court takes the D.C. Circuit at its word and considers, but does not find itself bound by, *Karimova*.

Having considered *Karimova*, the court is not inclined to follow it. The plaintiff in *Karimova* was in a similar position as Abdulbasit: she had applied for a visa, interviewed at an embassy, had her application "officially 'refused'" under Section 221(g), and then had her application placed in administrative processing. 2024 WL 3517852, at *2 (quoted sources omitted). Relying on various regulations and the Department of State's Foreign Affairs Manual ("FAM"), the D.C. Circuit reasoned that placing an application in administrative processing must

[6] Defendants cite D.C. Circuit Rule 32.1(b)(1)(B) for the proposition that unpublished opinions "still ha[ve] binding precedential weight." ECF No. 5, at 6 n.1. Not so. While unpublished opinions may be cited as precedent consistent with Rule 32.1(b)(1)(B), such opinions are persuasive, not binding, precedent. As the D.C. Circuit has explained—in a published opinion that is binding on this court—"[w]hile [unpublished] dispositions have some precedential value, they are 'obviously . . . not of the same precedential value as would be an opinion of this Court treating the question on the merits.'" *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) (quoting *Edelman v. Jordan*, 415 U.S. 651, 671 (1974)). Accordingly, unpublished decisions "may be considered persuasive authority, but they do not constrain a panel of the [C]ourt from reaching a contrary conclusion in a published opinion after full consideration of the issue." *Id*. Defendants have not persuaded this court to take a different approach.

be a "final" decision because a relevant regulation instructed that a consular officer "*must* issue" or "refuse" a visa following an interview, *id*. at *1 (quoting 22 C.F.R. § 42.81(a)), and because the FAM directed that, after an interview, "[c]onsular officers 'cannot temporarily refuse, suspend, or hold the visa for future action,'" *id*. (quoting 9 FAM § 504.1-3(g)). Drawing on these sources, the D.C. Circuit characterized Ms. Karimova as requesting "yet another 'final decision' on her already-refused visa application," as opposed to a final decision in the first instance. *Id*. at *6.

This interpretation places too much emphasis on the current language in the FAM—which does not carry the force of law, *see Aramnahad v. Rubio*, No. 24-CV-1817, 2025 WL 973483, at *7 (D.D.C. Mar. 31, 2025)—and too little emphasis on the allegations in a plaintiff's complaint and the realities of the visa-adjudication process, *see Al-Gharawy*, 617 F. Supp. 3d at 16 ("Although the State Department may 'choose[] to *characterize* a section 221(g) notification as a "refusal,"' that magic word is not a get-out-of-review-free card . . . [and] the Court must examine [a plaintiff's] allegations to determine whether the complaint sufficiently alleges that the consular officer's 'refusal' was in fact an 'interim decision [that] is not sufficiently final to warrant the application of the [consular nonreviewability] doctrine.'" (first alteration in original) (citation omitted) (quoting *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020))). It is impossible to square Defendants' assertion that placement in "administrative processing" was a *final* disposition of Abdulbasit's visa application, ECF No. 5, at 2, with the allegations in the complaint. First, Adnan alleges that he was informed that Abdulbasit's application had been "placed in administrative processing pursuant to . . . [Section] 221(g)," ECF No. 1 ¶ 25, and was asked to provide additional information about Abdulbasit, *id.* ¶ 27. Next, Adnan alleges that the U.S. Embassy in Iraq acknowledged receipt of the supplemental information he provided, *id*., and later informed him that it could not "predict how long this administrative review [would] take," ECF

No. 1-2, at 8, 18, 21. Finally, Adnan alleges that—through the office of Congressman Gerald Connolly—the U.S. Embassy in Iraq "positively assure[d] [Khevan] that [the Embassy would] proceed with the applications and notify the applicants as soon as [it had] any update."[7] ECF No. 1-5, at 16. Accepting these allegations as true and drawing all inferences in Adnan's favor—as this court must, *see Iqbal*, 556 U.S. at 678—Adnan has sufficiently alleged that he has not yet received a final decision on Abdulbasit's visa application, *see Aramnahad*, 2025 WL 973483, at *8; *cf. Ibrahim v. Spera*, No. 23-CV-3563, 2024 WL 4103702, at *3 n.2 (D.D.C. Sep. 6, 2024) (noting "that it is extremely difficult to square [*Karimova*'s] analysis, which is based largely on agency regulations, with the communications that visa applicants actually receive from various consulates").

Adnan does not challenge a final decision denying Abdulbasit's visa application, nor does he contend that this court should order Defendants to grant the application. *See generally* ECF

---

[7] The court's conclusion that placement in administrative processing under Section 221(g) is not a final determination is underscored by language on the Department of State's website, of which the court takes judicial notice. *See Arab*, 600 F. Supp. 3d at 63 n.1. The website explains that an application is placed in administrative processing when "[t]he consular officer could not conclude [a person] w[as] elegible [sic] for the visa sought and additional administrative processing of [the] application is required." U.S. Dep't of State, *INA Section 221(g) – Incomplete Application or Supporting Documentation*, https://perma.cc/Y3CN-REER. It further elaborates that a person who is placed in administrative processing "will be given a letter stating this" and "the embassy or consulate will contact [him] when the administrative processing is complete." *Id.* An inability to "conclude" whether a person is eligible for a visa is plainly different from a conclusive determination that a person is ineligible for a visa, and the instruction for the applicant to wait for the embassy or consulate to contact them after administrative processing is complete supports the court's conclusion that an applicant in this position is still awaiting a final decision on his application. *But see* U.S. Dep't of State, *Administrative Processing Information*, https://perma.cc/7FG4-C6K2 ("When an applicant is refused under 221(g), it means the consular officer determined that the applicant was not eligible for a visa after completing and executing the visa application and any required interview. It is possible that a consular officer will reconsider a visa application refused under 221(g) at a later date, based on additional information or upon the resolution of administrative processing, and determine that the applicant is eligible.").

No. 1. Rather, he argues only that Defendants "have failed to adjudicate [Abdulbasit's] visa application[] within a reasonable time." *Id.* ¶ 57. Several courts in this district have found, even after *Karimova*, that "the doctrine of consular nonreviewability does not bar challenges to timing as opposed to substance." *de Belinay v. Mayorkas*, No. 24-CV-240, 2025 WL 671120, at *4 (D.D.C. Mar. 3, 2025) (quoting *Shabestary v. Sanders*, No. 24-CV-362, 2024 WL 5118229, at *3 (D.D.C. Dec. 16, 2024)); *see, e.g.*, *Dib v. Shea*, No. 25-CV-4167, 2026 WL 1578859, at *3-4 (D.D.C. June 2, 2026); *Sluev v. Rubio*, No. 25-CV-899, 2026 WL 507894, at *2 (D.D.C. Feb. 24, 2026); *Tehran v. Rubio*, No. 25-CV-1584, 2025 WL 3551629, at *3-4 (D.D.C. Dec. 11, 2025); *Saraev v. Rubio*, No. 25-CV-1740, 2025 WL 3458777, at *3 (D.D.C. Dec. 2, 2025); *Thein v. Trump*, No. 25-CV-2369, 2025 WL 2418402, at *7-10 (D.D.C. Aug. 21, 2025); *Shushkov v. Rubio*, No. 24-CV-2265, 2025 WL 2389939, at *4-5 (D.D.C. Aug. 18, 2025); *Diabin v. Rubio*, No. 24-CV-3374, 2025 WL 1824841, at *3 (D.D.C. July 2, 2025); *Aramnahad*, 2025 WL 973483, at *10; *Mahmoodi v. Altman-Winans*, No. 24-CV-2010, 2025 WL 763754, at *4-6 (D.D.C. Mar. 11, 2025). *But see Rahman v. Bouldin*, No. 25-CV-1836, 2025 WL 3248585, at *3 (D.D.C. Nov. 21, 2025) (holding that the doctrine of consular nonreviewability bars review of visa applications placed in administrative processing); *Rezvani v. Rubio*, No. 24-CV-3381, 2025 WL 1293358, at *2 (D.D.C. May 5, 2025) (noting that "the consular non-reviewability doctrine would likely apply" but dismissing the suit for failure to demonstrate a non-discretionary duty); *Datta v. Rubio*, No. 24-CV-2937, 2025 WL 752643, at *5 (D.D.C. Mar. 10, 2025) (noting that *Karimova* "casts doubt" on earlier cases holding that the doctrine of consular nonreviewability did not apply).

This court follows the majority approach and determines that Adnan's action is properly understood as an attempt to compel an adjudication that has been unreasonably delayed, rather

than one aimed at changing a final decision that has already been rendered. Accordingly, Adnan's claims are not barred by the doctrine of consular nonreviewability.

### C. Non-Discretionary Duty

Defendants also contend that Adnan has failed to allege that "the government agency or official is violating a clear duty to act"—a threshold requirement for a mandamus claim and a merits question for a claim of unreasonable delay under the APA. *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *see* ECF No. 5, at 4. Specifically, Defendants argue that Adnan "cannot identify a clear, non-discretionary duty requiring a consular officer to take any action on the Visa Application[] now that [it has] been refused under INA Section 221(g)." ECF No. 5, at 4. As support for this proposition, Defendants again point to *Karimova*, which they argue is "dispositive" in cases like this one, where a plaintiff "seek[s] to compel State Department officials to act further on a visa application refused under INA Section 221(g) and undergoing post-refusal administrative processing." *Id.* at 5.

In *Karimova*, the D.C. Circuit held that the plaintiff had "not identified an adequate legal basis" for her action seeking to "compel[] the consular officer overseeing her visa application to make yet another 'final decision' on her already-refused visa application." 2024 WL 3517852, at *6. The Court characterized the plaintiff as "argu[ing] that Section 555(b) [of the APA]—and *only* Section 555(b)—'places a clear, non-discretionary duty' on her consular officer to re-adjudicate her already-refused application." *Id.* at *3. The Court easily determined that "Section 555(b) does no such thing" and instead "simply expresses 'a congressional view that agencies should act within reasonable time frames.'" *Id.* (quoting *Telecomms. Rsch. & Action Ctr. v. Fed. Commc'ns Comm'n* ("*TRAC*"), 750 F.2d 70, 77 (D.C. Cir. 1984)).

The problem for Defendants is that this rationale is wholly inapplicable given this court's understanding of the visa process. *See supra* Section III.B. It may be true that Section 555(b) does not create a duty to *re*-adjudicate a final decision where one has already been made, but, as this court sees it, that is not what plaintiffs like Adnan (or Ms. Karimova) are seeking. Instead, they are seeking an initial, final determination on a visa application. In this way, any discussion of how Section 555(b) applies to requests to re-adjudicate final visa decisions means very little for a plaintiff who seeks an initial final decision on his son's visa application and wishes for it to be made "within [a] reasonable time frame[]" as Section 555(b) requires. *TRAC*, 750 F.2d at 77.

Several courts in this district have concluded that there is a duty to complete adjudication of visa applications, explaining that "both the APA and State Department regulations create a clear duty to adjudicate visa applications within a reasonable time." *Sharov v. Rubio*, No. 25-CV-1930, 2026 WL 759476, at *4 (D.D.C. Mar. 18, 2026) (quoting *Ahmed v. Blinken*, 759 F. Supp. 3d 1, 10 (D.D.C. 2024)); *see, e.g.*, *Tehran*, 2025 WL 3551629, at *4-5; *Saraev*, 2025 WL 3458777, at *3; *Fetanat v. Rubio*, No. 24-CV-2298, 2025 WL 2643487, at *3-4 (D.D.C. Sep. 15, 2025); *Nikjooy v. Rubio*, 804 F. Supp. 3d 76, 85 (D.D.C. 2025); *Thein*, 2025 WL 2418402, at *11; *Diabin*, 2025 WL 1824841, at *3-4; *Rashidian v. Garland*, No. 23-CV-1187, 2024 WL 1076810, at *5 (D.D.C. Mar. 8, 2024); *Vulupala*, 438 F. Supp. 3d at 100. To be sure, this view is not universally held. *See Alnaddaf v. Rubio*, No. 25-CV-2491, 2026 WL 555314, at *12 (D.D.C. Feb. 27, 2026) (concluding that the plaintiffs failed to allege a non-discretionary duty to take further action on visa applications that had been placed in administrative processing); *see also, e.g.*, *Lorkalantari v. U.S. Dep't of State*, No. 25-CV-1947, 2026 WL 1707622, at *4-5 (D.D.C. June 12, 2026); *Rudd v. United States*, No. 25-CV-2646, 2026 WL 946112, at *3-5 (D.D.C. Apr. 8, 2026); *Jahani v. Rubio*, No. 25-CV-989, 2025 WL 3653542, at *3-4 (D.D.C. Dec. 17, 2025); *Baradaran v. Rubio*,

No. 24-CV-2946, 2025 WL 2506546, at *2-4 (D.D.C. Sep. 2, 2025); *Pour v. Rubio*, No. 25-CV-573, 2025 WL 2374559, at *4-7 (D.D.C. Aug. 14, 2025); *Seifan v. Sweeney*, No. 25-CV-261, 2025 WL 2171093, at *4-5 (D.D.C. July 31, 2025); *Javaid v. Armstrong*, No. 24-CV-2716, 2025 WL 2144100, at *2-3 (D.D.C. July 29, 2025); *Pasiukevich v. Lawton*, No. 24-CV-3349, 2025 WL 2023207, at *3-4 (D.D.C. July 17, 2025); *Ibrahim*, 2024 WL 4103702, at *3.

This court continues to adhere to the view that consular officials have a non-discretionary duty to fully adjudicate a visa application. Issuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations. *See Khazaei v. Blinken*, No. 23-CV-1419, 2023 WL 6065095, at *6 (D.D.C. Sep. 18, 2023); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (explaining that the APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)").

But even if the court read *Karimova* with the D.C. Circuit's understanding that Section 221(g) refusals are final, it would still deny Defendants' motion to dismiss. That is because—even taking the argument on the D.C. Circuit's own terms—the Court did not rule that *no* source of law creates a non-discretionary duty to re-adjudicate a visa application, just that "Section 555(b)—and *only* Section 555(b) . . . does no such thing." *Karimova*, 2024 WL 3517852, at *3. Setting Section 555(b) aside, Adnan has cited additional sources of law that he contends establish a non-discretionary duty to fully adjudicate Abdulbasit's visa application. ECF No. 1 ¶ 48 (citing 8 U.S.C. §§ 1153(a), 1202(b)). At this early stage of litigation, that is sufficient.

**D. Unreasonable Delay**

On the merits, Defendants argue that Adnan has failed to state a claim for unreasonable delay on which relief can be granted. ECF No. 5, at 12-19. Adnan's claims under the APA and the Mandamus Act share the same standards for obtaining relief. *See Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 79). Unreasonable delay is analyzed using six "*TRAC*" factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Am. Hosp. Ass'n*, 812 F.3d at 189 (quoting *TRAC*, 750 F.2d at 80). While not "ironclad," the *TRAC* factors provide "useful guidance in assessing claims of agency delay." *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). "Each case must be analyzed according to its own unique circumstances," because each "will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n, Int'l v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984). The first and fourth factors are most important in the visa context. *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023). Weighing the *TRAC* factors here,

the court concludes that Adnan has failed to plausibly allege a claim for unreasonable delay in Defendants' adjudication of Abdulbasit's visa application.[8]

The first two factors—requiring agencies to follow "a rule of reason" that justifies their timeline and consider any congressionally imposed timelines—are typically analyzed together. *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020) (quoting *TRAC*, 750 F.2d at 80). In essence, these two factors require the court to evaluate "whether 'there [is] any rhyme or reason—congressionally prescribed or otherwise—for [the] agency's delay.'" *Rashidian*, 2024 WL 1076810, at *6 (alterations in original) (quoting *Khazaei*, 2023 WL 6065095, at *6). In analyzing these factors, the court may consider "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Da Costa*, 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1102). Both factors favor Defendants.

Adnan cites to the INA, which provides that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b); *see* ECF No. 7, at 27. He argues that Abdulbasit's visa application "should have been completed 'not later than' January 31, 2025." ECF No. 7, at 27; *see* ECF No. 1 ¶ 50. But this guidance is not binding, and therefore cannot be considered to set forth a congressionally imposed deadline. *See Da Costa*, 80 F.4th at 344 (describing Section 1571(b) as an "aspirational statement"). Nor is Adnan's reliance on

---

[8] Adnan suggests that application of the *TRAC* factors is premature at the motion-to-dismiss stage. ECF No. 7, at 24-25. The court is unpersuaded, as it is the majority view in this Circuit that "[w]here a plaintiff's complaint supplies sufficient factual allegations to evaluate the *TRAC* factors," a court may evaluate "whether the facts alleged are sufficient to state a plausible claim for unreasonable administrative delay." *Sereshti*, 2024 WL 4625802, at *7. Indeed, courts routinely consider the *TRAC* factors when considering a motion to dismiss. *See, e.g.*, *Da Costa*, 80 F.4th at 346 (affirming dismissal of a plaintiff's unreasonable delay claim); *Tehran*, 2025 WL 3551629, at *5 (collecting cases). The court will do the same here.

out-of-circuit opinions persuasive in arguing that Section 555(b) itself creates a congressionally mandated deadline. ECF No. 7, at 28 (citing *Mobayen v. Blinken*, 780 F. Supp. 3d 969, 981 (C.D. Cal. 2025)). Although Adnan is correct that Section 555(b) requires agencies to conclude matters within a reasonable time, that subsection does not supply any timetable governing an agency's response time.

Congress "has given the agencies wide discretion in the area of immigration processing," *Sarlak v. Pompeo*, No. 20-CV-35, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017)), and "[a]bsent a congressionally supplied yardstick, courts typically turn to case law as a guide" as to what is reasonable, *id.* at *6. While "[n]o bright lines have been drawn in this context . . . '[d]istrict courts have generally found that immigration delays . . . between three to five years are often not unreasonable.'" *Arab*, 600 F. Supp. 3d at 70 (third alteration in original) (quoting *Sarlak*, 2020 WL 3082018, at *6). "Courts calculate delays in visa processing using the period between the last government action and the issuance of the opinion." *Asadi v. U.S. Dep't of State*, No. 23-CV-1953, 2024 WL 3835409, at *6 n.2 (D.D.C. Aug. 15, 2024) (internal quotation marks and alteration omitted). About twenty-six months will have passed between Abdulbasit's visa interview in July 2024 and the issuance of this opinion. ECF No. 1 ¶ 24. Although such a timeline is undoubtedly frustrating, the court is satisfied that Defendants use a rule of reason that does not constitute unreasonable delay. *See, e.g.*, *Da Costa*, 80 F.4th at 342 (holding that a four-and-a-half-year delay was not unreasonable); *Varghese v. Blinken*, No. 21-CV-2597, 2022 WL 3016741, at *5 (D.D.C. July 29, 2022) (explaining that a four-year delay "would not warrant judicial intervention, standing alone").

The fourth *TRAC* factor, which is "the effect of expediting delayed action on agency activities of a higher or competing priority," is particularly important in the visa context and also

favors Defendants. *Da Costa*, 80 F.4th at 343 (quoting *TRAC*, 750 F.2d at 80). The D.C. Circuit has "refused to grant relief . . . where 'a judicial order putting [the plaintiff] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain.'" *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100 (third, fourth, and fifth alterations in original) (quoting *In re Barr Lab'ys, Inc*., 930 F.2d 72, 75 (D.C. Cir. 1991)). Such would be the case here, where moving Abdulbasit to the front of the visa-adjudication queue would merely reorder all applicants with no change in the overall timeline.

Adnan alleges that "Defendants seemingly retain all the information necessary to render a final decision on [Abdulbasit's] case at this time," and he claims that such a decision would not reorder visa processing. ECF No. 7, at 30. He also asserts that a recent visa freeze affecting seventy-five countries, including Iraq, prevents Abdulbasit from reuniting with his family. ECF No. 7, at 9, 11; *see generally* ECF No. 7-1. But Adnan did not seek to amend his complaint to add any claim arising out of the visa freeze, so no such claim is properly before the court. Nor did Adnan meaningfully raise any argument about the impact of the visa freeze resulting in unreasonable delay. *Compare* ECF No. 7, at 9, 11, *with id.* at 24-32.[9] In any event, Adnan does

[9] Adnan also points out in a notice of supplemental authority that two district courts have held that the recent seventy-five-country visa freeze policy is unlawful and that "indefinite suspension of visa processing pursuant to an unlawful policy fail[s] the 'rule of reason' prong." ECF No. 9, at 4; *see De Moura Gomes v. Rubio*, No. 26-CV-01883, 2026 WL 2212503 (D.D.C. July 31, 2026); *Cath. Legal Immigr. Network, Inc. v. Rubio*, No. 26-CV-00858, 2026 WL 2455099 (S.D.N.Y. Aug. 21, 2026), *appeal docketed*, No. 26-2573 (2d Cir. Sep. 15, 2026). But, as noted, Adnan did not amend his complaint to allege that this policy was unlawfully delaying Abdulbasit's visa adjudication, and "[i]t is 'axiomatic' that a party may not amend his complaint through an opposition brief." *Singh v. District of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014) (quoting *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 74 n.25 (D.D.C. 2007)). Nor can a party "raise new arguments that were previously available to them through a notice of supplemental authority." *Advocs. for Hum. Rts. v. Blanche*, No. 26-CV-865, 2026 WL 2607203, at *18 n.14 (D.D.C. Sep. 3, 2026).

not seek to alter the entire queue by directly challenging the policy decision; instead, he seeks only to exclude Abdulbasit from the visa freeze so that Abdulbasit may reunite with his family. ECF No. 7, at 13. "Th[ese] assertion[s], however, do[] not grapple with the fact that [Adnan's] request here boils down to a request that [his son] 'should be prioritized for processing ahead of others.'" *Augustin v. Blinken*, No. 23-CV-76, 2023 WL 4547993, at *6 (D.D.C. July 14, 2023) (quoting *Milligan v. Blinken*, No. 20-CV-2631, 2021 WL 3931880, at *9 (D.D.C. Sep. 2, 2021)).

To be sure, the delay that Adnan, Abdulbasit, and the rest of their family face is problematic. But compelling Defendants to process specific applications presents an individualized solution to a systemic problem and "would presumably delay other adjudications." *Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (quoting *Skalka*, 246 F. Supp. 3d at 154). Additionally, "deference must be given to the State Department's priority-setting and resource-allocation decisions" in the visa-adjudication context. *Arab*, 600 F. Supp. 3d at 71. It would be improper for the court to intervene and expedite Abdulbasit's visa application at the expense of others. The fourth factor thus weighs heavily in favor of Defendants.

The third and fifth *TRAC* factors concern the impacts of the delay on a plaintiff. The third factor identifies "whether 'human health and welfare are at stake'—in which case judicial intervention is more justified—and the fifth assesses the 'nature and extent of the interests prejudiced by delay.'" *Milligan*, 502 F. Supp. 3d at 319 (quoting *TRAC*, 750 F.2d at 80). These factors weigh in Adnan's favor. Adnan alleges that Abdulbasit faces a "risk of being targeted by militias or other hostile groups" as a result of Khevan's work as a translator for the U.S. military, making the case not merely "a matter of family unity, but a matter of life and death." ECF No. 1 ¶ 9. In addition, Adnan has alleged "ongoing political instability, economic hardship, and the persistent threat of sectarian violence" in Iraq, where "services like electricity and clean water are

often unreliable." *Id.*; *see* ECF No. 7, at 9. Since Adnan and his other family members' visas have been issued, the delay of Abdulbasit's visa has resulted in an "unconscionable" family separation. ECF No. 7, at 14. These harms are unfortunate. But without more facts suggesting otherwise, these harms do not threaten Adnan's or Abdulbasit's physical health and well-being in a manner compelling enough to overcome Defendants' advantage on the more important factors. *See Da Costa*, 80 F.4th at 345 (concluding that the third and fifth *TRAC* factors did not favor the plaintiffs where their allegations of inconsistent access to electricity and water were "generalized to the population of the city where they live[d], not tied to their individual circumstances"); *Janay v. Blinken*, 743 F. Supp. 3d 96, 118 (D.D.C. 2024) (determining, on balance, that there was no unreasonable delay even though family separation weighed in the plaintiff's favor under the third and fifth *TRAC* factors).

Finally, the sixth *TRAC* factor concerns "whether the agency's bad faith caused the delay." *Sawahreh*, 630 F. Supp. 3d at 164. Adnan does not argue that Defendants have acted in bad faith by failing to adjudicate Abdulbasit's visa. ECF No. 7, at 32. Thus, "the good faith of the agency in addressing the delay weighs against equitable relief." *Sawahreh*, 630 F. Supp. 3d at 164 (quoting *Milligan*, 502 F. Supp. 3d at 319).

* * *

As the D.C. Circuit explained in *Da Costa*, delays in visa adjudications are "troubling." 80 F.4th at 344. The costs of this delay have surely been difficult for Adnan, Abdulbasit, and the rest of the family. But after weighing the *TRAC* factors, the court concludes that Adnan fails to state a plausible claim of unreasonable delay in Defendants' adjudication of Abdulbasit's visa application under the APA or the Mandamus Act. "The most important factors—those regarding the length of the delay and concerns about line-jumping—weigh in favor of granting the motion

to dismiss, and factors three and five are not strong enough to justify the opposite conclusion." *Meyou v. U.S. Dep't of State*, No. 21-CV-2806, 2022 WL 1556344, at *5 (D.D.C. May 17, 2022). Accordingly, the court will dismiss Adnan's claims under Rule 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, the court will grant Defendants' Motion to Dismiss, ECF No. 5. A contemporaneous order will issue.

LOREN L. ALIKHAN
United States District Judge

Date: September 21, 2026